## BONNER *et al.*, *vs.* ANDREWS.

1. When the trustees of a *feme covert* have acquired a statutory title to slaves, as against the husband, can that title be defeated by a sale of the property to a third person by the husband, the purchaser having no notice of the plaintiff's title ?

2. When the bill of exceptions is ambiguous upon an important point, upon which the case turns, and no argument has been submitted by counsel, it is the safer course to remand the cause for a new hearing.

Trover, in Putnam Superior Court.  Tried before Judge HARRIS, at March Term, 1860.

This was an action of trover brought by Oliver. H. Bonner and Richard W. Bonner, trustees of Nancy C. Andrews, wife of James G. Andrews, against Davis R. Andrews, for the recovery of three negro slaves, to-wit : Ellen, a woman about twenty years of age, and her two children, Emma, about eighteen months old, and an infant named Lorenzo— all of the value of $1,800 00.

The defendant pleaded the general issue.

The plaintiffs, in support of their title, offered in evidence the will of James Bonner, deceased, the sixth item of which is as follows:

"I give and bequeath to my daughter, Nancy C. Brown, now Nancy C. Andrews, and the legitimate heirs of her body, the following property, to-wit: a woman named Polly and her three children, to-wit . Mary, Susan and Ellen ; also big Mary, having given her a mare, saddle and bridle," etc.

By the ninth item he appoints Oliver H. Bonner and Richard W. Bonner, his sons, his executors to carry into effect his will.   He also appoints trustees to carry into effect that part of his will "in regard to the negroes given to his daughter, Nancy C. Andrews," etc.

This case was brought before this Court at November term, 1858, (26 *Ga. Rep.*, 520,) where it was held and decided that the forgoing clauses in the will of James Bonner, deceased, did not create a separate estate in Mrs. Andrews, nor an estate to her and her children, but that the negroes vested in, or were given absolutely to her, and that the marital rights of her husband attached, who had the absolute title thereto, with power of sale, etc., and reversed the judgment of the Court below, and remanded the cause.

The case again coming up for trial in the Court below, plaintiffs proposed, and undertook to obviate or avoid the force of the judgment of the Supreme Court, by proof that it was the intention of testator to create a separate estate in Mrs. Andrews and her children, and that the husband had recognized, acquiesced in, and acted upon this understanding, and that the trustees had taken possession and control of the negroes, and managed and used them as the separate estate for a period of time that would give them a title by operation of the Statute of Limitations. They proved by John L. Moore, who resided in Baldwin county, a demand upon defendant for the negroes and his refusal to deliver them up ; that defendant purchased them from James G. Andrews for $1,000 00 ; that defendant admitted that he had seen James Bonner's will, and that he did not doubt that it was his intention to secure the property to Mrs. Andrews and her children ; that Mrs. Andrews knew nothing of the sale of the negroes to him, defendant, until he went to pay for them, when he informed her of it. He then asked her playfully to sign the bill of sale, which she refused to do, but she said she had written to her brothers about it; when defendant replied to her, that he was glad of it, as it would save him the trouble of informing them. The plaintiff, Oliver H. P. Bonner, hired out the girl, Susan, in 1844, and the same year Polly was hired to Dr. Case, in Milledgeville ; in 1853, Mrs. Andrews was at her mother's, in Baldwin county, and the negroes came to her there and remained the balance of that year, and witness understood them to be under the control of Oliver Bonner ; never heard James G. Andrews say anything about the ownership of said negroes, and knows of no acts of ownership or control by Oliver H. P Bonner, except his hiring of Susan to David Collins in 1844 ; James G. Andrews married in 1839 ; James Bonner died 4th July, 1841 ; the year after his marriage, Andrews had no settled home ; he took possession of the negroes 1st January, 1841, when he went to house-keeping, about six months before old man Bonner's death ; he settled about twelve or fourteen miles from his father-in-law ; in 1840, he was at old man Bonner's part of the year ; in 1841, lived in Jones county, in 1842, at old Mrs. Bonner's, in Baldwin county ; in 1843, he went to Alabama, and returned to Georgia in 1844 ; in 1845, 1846, and 1847, he lived in Baldwin county ; in 1849,

he went to Putnam; since then, don't know his place of abode; he took the negroes with him when he went to Alabama in 1843; no attempt made to prevent him taking the negroes to Alabama.

Plaintiffs then offered to prove by James G. Andrews, the husband of *cestui que trust*, that he married in October, 1839, and that shortly thereafter old Mr. Bonner gave him certain negroes, (the same in controversy,) upon the understanding and agreement that he should hold them for the separate use of his wife; that he assented to this arrangment, and held them as the separate estate of his wife, after the making of the will; that he was present when the will was made, and heard a portion of it read, and a conversation about the settlement of the property between testator and the draftsman of the will.

This testimony plaintiff proposed to introduce for the purpose of showing the circumstances and contemporaneous declarations, as throwing light upon, and ascertaining the intention of testator. The Court rejected the testimony, and plaintiffs excepted.

Plaintiffs then proposed to prove by said witness, James G. Andrews, that when he received said negroes from his father-in-law, that it was under a parol agreement, that he was to take and hold them in trust for the benefit of his wife and children, and that he assented to said arrangement, and that he held the negroes under this trust, and that the trustees named in the will acted on this understanding, and from 1840 up to 1857 had hired out the negroes from time to time, taking notes for the hire.

The testimony was repelled by the Court, and counsel for plaintiffs excepted.

Plaintiffs then proposed to show that they had a title by possession, under and by virtue of the Statute of Limitations, in this: that said trustees had exercised acts of ownership over the negroes adversely to the rights of the husband for fifteen years, by hiring them out, and that the husband had recognized their title during the whole of this period, and that defendant purchased the negroes with notice of all the facts in relation to the trust under the will. This testimony the Court also repelled, holding that it was incompetent, unless they found that defendant had notice of the parol trust. To which ruling counsel for plaintiff excepted.

The jury found for the defendant; whereupon, counsel for plaintiffs tendered their bill of exceptions, assigning as error the ruling and decisions above stated and excepted to.

E. A. NISBET; JUNIUS WINGFIELD, for plaintiffs in error.

GEO. T. BARTLETT, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

The plaintiffs, by their counsel, offered to show that they had a statutory title to the negroes in dispute; that they had exercised acts of ownership over the property adverse to the rights of Andrews, the husband and the vendor of the defendant, for fifteen years, having hired out the property whenever they chose to do so, and having exercised various other acts of ownership, and that said Andrews had recognized the title of the plaintiffs during the whole of said period. They proposed, further, to show that the defendant, Davis R. Andrews, bought the property which is the subject of the suit with notice of all the facts in relation to the trust under the will; which motion was overruled by the Court, the Court holding that the evidence would be unavailable, unless the plaintiff should bring home to the defendant knowledge if the parol trust.

Suppose it be true, that the plaintiffs have acquired a complete statutory title to the slaves in controversy, as against James G. Andrews, is it necessary, to enable them to recover the property of his vendee, that he should have notice of their title, under which they claimed and exercised the right to control these negroes? The offer rejected by the Court concedes that he had notice of the supposed trust under the will of old man Bonner. True, this Court has decided that no sufficient trust was created by that instrument. If, however, the plaintiffs have held the property for fifteen years, under a parol trust adversely to James G. Andrews, can he defeat a statutory title thus acquired by selling the negroes to the defendant, with or without notice?

As no argument has been submitted upon this view of the case, and being uncertain whether we comprehend correctly the bill of exceptions as amended by the presiding Judge, touching this matter, we prefer to remand the cause for a rehearing.

Judgment reversed.